**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-00919-CMA-MJW

KELLIE RHODES, on behalf of herself and others similarly situated,

 Plaintiff,

v.

OLSON ASSOCIATES, P.C., d/b/a OLSON SHANER,

 Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY
JUDGMENT AS TO LIABILITY, AND CERTIFYING CLASS ACTION**

---

  This matter comes before the Court on Defendant Olson Associates, d/b/a Olson Shaner's ("Olson Shaner's") Motion for Summary Judgment (Doc. # 13), as well as Plaintiff Kellie Rhodes' Cross-Motion for Summary Judgment as to Liability (Doc. # 24) and her Motion for Class Certification and Appointment of Class Counsel (Doc. # 25.) Because the Court determines that there are no disputed facts as to whether Defendant's conduct violated the Fair Debt Collection Practices Act, it denies Defendant's Motion for Summary Judgment and grants Plaintiff's Cross-Motion for Summary Judgment. In addition, because the Court finds that Plaintiffs have met all of the requirements of Federal Rule 23(a), the Court grants Plaintiff's Motion for Class Certification and Appointment of Class Counsel.

## I.  <u>BACKGROUND</u>[1]

### A.  OLSON SHANER'S VOICEMAILS

The material facts of this Fair Debt Collection Practice Act case are quite straightforward.  Plaintiff Kellie Rhodes incurred a debt of $732.06 for emergency medical care from APEX Emergency Group-St. Anthony North.  APEX assigned this debt to North American Recovery, Inc. (N.A.R.).  (Doc. # 23-2 at 2.)  Thereafter, N.A.R. hired Olson Associates, P.C., d/b/a Olson Shaner, a law firm, to initiate legal proceedings against Rhodes relating to this debt.  (Doc. ## 13 at ¶ 4.)  Olson Shaner sent its "First Notice" regarding the debt to Rhodes on July 30, 2014.  (Doc. # 13-1 at ¶ 6.)  The "First Notice" appeared on Olson Shaner's letterhead, but was signed by "Kelsey Mirelez, Attorney for N.A.R., Inc."  (Doc. # 23-2 at 2.)

Plaintiff called Olson Shaner on September 6, 2013, and spoke with a representative named Liz;[2] Liz notified Plaintiff that she was speaking to Plaintiff in "an attempt to collect a debt," and that "[a]ny information obtained w[ould] be used for that purpose and this call [was] being recorded."  (Doc. # 13-3.)   During the call, Plaintiff acknowledged receiving a letter "from an N.A.R. Attorney."  (*Id.* at 4:9-10.)  Additionally, Plaintiff stated that she was calling to obtain the name of that attorney, as she had lost the letter during a move.  (*Id.* at 3:13-16; 4:10-13.)  Notwithstanding Liz's offers to answer questions regarding Plaintiff's account, Plaintiff stated that she wished to obtain a mailing address so she could respond in writing: "What I'd like to do is respond in

---

[1] The following facts are undisputed, unless otherwise noted.

[2]  Liz's last name was not provided in the call transcript.

writing and I'm just looking – I got a letter and I'm just looking for a – like a mailing

address where I could mail you a written response." (*Id.* at 5:9-12.)  Liz provided

Plaintiff with this name (Kelsie Morales) and two mailing addresses (one in Utah and

one in Colorado).  (*Id.* at 3:13; 5:18-20; 7:12-18.)  The next day, Plaintiff sent a letter to

Ms. Morales regarding her debt at both of these addresses.  (Doc. # 13-4.)  Her letter

indicated that the debt was referred to N.A.R. for repayment, despite the fact she had

been making monthly payments to the original creditor.  (*Id.*)

Olson Shaner instructs its employees to use the following scripted voicemail

message ("the Scripted Voicemail") when they attempt to reach alleged debtors and

those debtors do not answer the phone:

> Hello, this message is for [debtor/co-debtor].  My name is [Olson Shaner
> employee's name] and I am with Olson Shaner.  Please return my call
> regarding a personal matter. I will be in the office today until [time], and
> will return [tomorrow/on Monday] at [time].  I can be reached at 801-363-
> 9966 (UT/ID) 303-459-4799 (CO).

(Doc. # 23-3.)  On September 17, 2013, an Olson Shaner representative named Tia

Metters left Plaintiff a materially identical version of the Scripted Voicemail, which was

recorded as follows:

> Hi, this message is for Kellie Rhodes.  Kellie, this is Tia with the law firm of
> Olson Shaner.  Please return my call regarding a personal matter. I'll be in
> the office today until five and I will return tomorrow morning at 8:30.  You
> can reach me at 303-459-4799.  Thank you.

(Doc. ## 13-5; 13-2 at 2 (log notes indicating that Defendant's representative "left script

message" for Plaintiff on September 17.))  Ms. Metters left an identical voicemail

message for Plaintiff on both September 18 and 19, 2013.  (Doc. ## 13-6; 13-7; 13-2.)

The content of these three messages is the subject of this action.

### B. CLASS CERTIFICATION

In her Motion for Class Certification and Appointment of Class Counsel (Doc. #

25), Plaintiff seeks to certify the following Class:

> All persons (1) located in Colorado, (2) for whom Olson Associates, P.C.
> left, or caused to be left, a voice message, (3) in connection with the
> collection of a consumer debt, (4) between March 31, 2013 and March 30,
> 2014, (5) that failed to state that Olson Associates, P.C. was a debt
> collector and/or that the purpose of the call was to collect a debt and/or
> that any information would be used for that purpose.

Defendant has a written policy to leave scripted voicemail messages that are

very similar to those left for Plaintiff and that fail to disclose that (1) it is debt collector,

(2) it is calling to collect on a debt, and (3) that any information it collects will be used for

that purpose. *See* (Doc. ## 25-1 (Defendant's "Leaving Message Policy," bates

stamped OS000039); 25-2 at 9 (Defendant's Responses to Plaintiff's First Set of

Interrogatories, stating that "Any voicemail message that would have been left is

expected to be consistent with the voicemails at issue in this case and the document

attached hereto, carrying Bates-Stamp No. OS000039."))

Defendant states that of its approximate 6,700 collection accounts, "the likelihood

that Defendant would have left a voicemail message is estimated to be about 50% of

those accounts [i.e., 3350 accounts].  However . . . Defendant would not be able to

determine the exact number of persons for whom Defendant left a message without

reviewing each of those individual accounts."  (Doc. # 25-2 at 8.)  Additionally,

Defendant keeps individual records indicating when its representatives leave a "SCRIPT

MESSAGE" for alleged debtors.  *See, e.g.* (Doc. # 13-2 at 2) (noting that it left Plaintiff a

"SCRIPT MESSAGE" on three different occasions in September of 2013); (Doc. # 29 at

6) (noting that "In order to determine whether a voicemail message was left, each of the account notes would need to be reviewed to see if there are any notations regarding a voicemail message.")

### C. PROCEDURAL HISTORY

On March 31, 2014, Plaintiff filed a putative Class Action Complaint against Defendant for violations of the FDCPA (Doc. # 1.)  Defendant then filed a Motion for Summary Judgment on June 6, 2014.  (Doc. # 13.)  Plaintiff filed a Cross-Motion for Summary Judgment as to Liability on July 9, 2014, and a Motion for Class Certification and Appointment of Class Counsel on July 18, 2014.  (Doc. ## 24, 25.)

## II.  LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

The Court applies the same standard on cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and its entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the Court may address the legal arguments together. *Id.* In

6

this case, the legal issues and arguments presented by each summary judgment motion are almost identical.  Therefore, the Court addresses the legal issues together.

## B. CLASS CERTIFICATION

A class may be certified only if all four of the following prerequisites are met:

(1) **Numerosity**: "the class is so numerous that joinder of all members is impracticable";

(2) **Commonality**: "there are questions of law or fact that are common to the class";

(3) **Typicality**: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) **Adequacy of representation**: "the representative parties will fairly and adequately represent the interests of the class."

Fed. R. Civ. P. 23(a).  A party seeking class certification must show "under a strict burden of proof" that all four requirements are clearly met, as well as show that the case falls into one of the three categories set forth in Rule 23(b).  *Trevizo v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006); *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013).

## III.  ANALYSIS

The Court will address the parties' respective summary judgment motions before turning to Plaintiff's Motion for Class Certification.

## A. FDCPA VIOLATIONS

Congress enacted the FDCPA ("the Act") in 1977 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to

promote consistent State action to protect consumers against debt collection abuses."

15 U.S.C. § 1692e.  The Act prohibits a debt collector from using "any false, deceptive,

or misleading representation or means in connection with the collection of any debt."  15

U.S.C. § 1692e.  As pertinent to the present case, "the placement of telephone calls

without meaningful disclosure of the caller's identity" is a violation of the Act, as is the

failure to disclose, in any "subsequent communication" with a debtor, that "that the

communication is from a debt collector."  15 U.S.C. § 1692d; 1692e(11).

Because the FDCPA is a strict liability statute, Plaintiff need demonstrate only

one violation of its provisions to be entitled to a favorable judgment.  *Doshay v. Global*

*Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1303-04 (D. Colo. 2011).

### 1.  Required Elements Of The FDCPA

To establish a violation of the FDCPA, Plaintiff must prove the following four

elements:

> (1) Plaintiff is any natural person who is a "consumer" within the meaning of 15 U.S.C. § 1692a(3);
>
> (2) The "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5);
>
> (3) Defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and
>
> (4) Defendant has violated, by act or omission, a provision of the FDCPA.

*Duncan v. Citibank (S.D.),* No. 06–246, 2006 WL 4063023, at *5 (D.N.M. June 30,

2006) (quoting 29 M. Wengert, Causes of Action 2d 1 § 49 (2005)).   Here, the first

three elements of Plaintiff's claim are undisputed (Doc. # 23 at ¶¶ 1-5) – accordingly,

the Court's analysis on summary judgment is limited to the fourth element.

**2. The Voicemail Messages Here Were "Communications," and Because Defendant Failed to Identify Itself as a Debt Collector, It Violated 15 U.S.C. § 1692e(11)**

The Act broadly defines a "communication" as the "**conveying of information regarding a debt directly or indirectly** to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added). Defendant argues that 15 U.S.C. § 1692e(11) ("Section 1692e") – requiring disclosure "in subsequent communications that the communication is from a debt collector" – is inapplicable to her claim, because the voicemail messages at issue here were not "communications" as they did not "directly or indirectly" convey "information regarding a debt."

In support of its interpretation of "communication," Defendant cites *Marx v. General Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011) *aff'd*, 133 S. Ct. 1166 (2013). In *Marx*, a debt collector sent a facsimile "employment verification form" to a debtor's employer. *Id.* at 1176. The form contained the debt collector's name ("GRC"), address, and phone number, as well as an "ID" number representing the debt collector's internal account number for Plaintiff. *Id.* The form explicitly indicated that its purpose was to "verify employment" and to "request employment information," and blanks were left for the employer to fill in the individual's employment status. *Id.* The Tenth Circuit held that the form was not a "communication" for purposes of 15 U.S.C. § 1692c(b), which provides that a "debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer." *Id.* at 1177. In doing so, it noted:

> **A third-party "communication,"** to be such, **must indicate to the recipient that the message relates to the collection of a debt**; this is

> simply built into the statutory definition of "communication."  This fax cannot be construed as "conveying" information "regarding a debt." Nowhere does it expressly reference debt; it speaks only of "verify[ing] [e]mployment."  **Nor could it reasonably be construed to imply a debt.** In order to substantiate the claim that the facsimile "conveys" information "regarding a debt," either "directly or indirectly," Ms. Marx had the burden of proving such a conveyance; the standard is not whether the facsimile could have had such an implication.  . . . **[A]bsent any evidentiary showing that Ms. Marx's employer either knew or inferred that the facsimile involved a debt, the facsimile does not satisfy the statutory definition of a "communication."**  A party may seek to verify employment status (without hinting at a debt) for any number of reasons, including as part of processing a mortgage, conducting a background check before hiring, or determining eligibility for an extension of credit.

*Id.* (emphasis added).

*Marx*'s reasoning is inapplicable here for several reasons.  Most significantly, *Marx* involved a "third party" communication under an entirely different statutory section (Section 1692c(b)) – **not** a communication directly to the debtor under Section 1692e. In *Marx*, the Tenth Circuit made it clear that it was specifically interpreting a "third party 'communication,'" in noting that "a single fax, innocuous, nondescript, and harmless, which [the debt collector] sent only to gather information needed to weigh a statutory right of garnishment" was "manifestly not the sort of conduct the FDCPA is meant to quell."  *Id.* at 1183.  Specifically, it stated that "[t]he **ban on communicating with third parties** like employers is meant to protect debtors from harassment, embarrassment, loss of job, denial of promotion," and that plaintiff was "unable to testify that anyone at her office had any idea what the fax concerned."  *Id.* (emphasis added).

In contrast, the Scripted Voicemails left here were not left for a third party for the purpose of employment verification; instead, they were left for Plaintiff directly, for the sole purpose of collecting a debt, and thus the concern was not so much

embarrassment, loss of job, or denial of promotion, but whether Plaintiff was aware that a debt collector was attempting to reach her.[3]  Although the Scripted Voicemail did not "directly" convey information regarding a debt, it did so "indirectly" – in particular, it conveyed that Plaintiff could **resolve her debt** by contacting Olson Shaner.[4]  See *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008) (emphasis added) (finding it "apparent that messages left on a debtor's answering machine can be considered indirect communications regarding the debt, even if the debt collector fails to expressly mention that the call pertains to collection, payment, deadlines or any other observable characteristics of a collection call.  **Any other interpretation would require a claimant to prove, without exception, that the debt collector conveyed direct information about the debt.  This is not what the statute calls for**, and this is not the first time such a narrow interpretation of the statute has been rejected").  Indeed, Defendant appears to concede this point when it argues

---

[3] The Court recognizes that the Act places debt collectors between the proverbial "rock and a hard place" when it comes to leaving voicemail messages.  Debt collectors must choose between violating Section 1692d(6) and Section 1692e(11) (by leaving messages which do not clearly identify themselves as debt collectors), or violating 15 U.S.C. § 1692c(b)'s third-party privacy requirement (by violating the debtor's privacy rights by identifying themselves as debt collectors in a message that could be heard by third parties).  *See Zortman v. J.C. Christensen & Associates, Inc*, 870 F. Supp. 2d 694, 699 (D. Minn. 2012).  Other courts, recognizing this problem, have concluded that it constitutes the "cost of doing business" if debt collectors choose to utilize particular technological methods, i.e., voicemail, for debt collection.  *See, e.g., Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009) ("[I]f [the debt collector's] assumption is correct, the answer is that the [FDCPA] does not guarantee a debt collector the right to leave answering machine messages"); *Leyse v. Corp. Collection Servs., Inc*, No. 03 CIV. 8491, 2006 WL 2708451, at *5 (S.D.N.Y. Sept. 18, 2006).  This Court's job is to enforce the statute as written.  Thus, the remedy does not lay in this Court, but in obtaining legislative reform.  Indeed, despite large technological developments, the FDCPA has not been substantively amended since its passage in 1977, when voicemail technology was unavailable.

[4] In the alternative, for these same reasons, the message could be "reasonably be construed to imply a debt." *Marx*, 668 F.3d at 1177.

elsewhere that because Plaintiff and Defendant's representatives "had prior interactions where it was made clear that Olson Shaner was attempting to collect a debt from Plaintiff," that Plaintiff was already aware of the debt-collection purpose of the call. (Doc. # 26 at 3.)

This common-sense interpretation of what it means to "indirectly" convey information regarding a debt is supported by the Federal Trade Commission's ("FTC's") advocacy of a broad interpretation of the scope of section 1692e.[5]  *See FTC Staff Commentary on the FDCPA*, 53 Fed. Reg. 50097–02, at *50099 (Dec. 13, 1988).  The FTC explained that some contacts with consumers can violate the FDCPA because they at least "indirectly" refer to the debt, even if a monetary obligation or the word "debt" is not specifically mentioned:

> For example, there is no doubt that a debt collector who has previously contacted a consumer about a debt violates [the Act] if he calls the consumer at 3 AM and says only "Hi, this is Joe, I haven't forgotten you"— the words may not refer to the debt, but the consumer will know from previous collection efforts by "Joe" what the call is about. **The words "or indirectly" in the definition make it clear that Congress intended a common sense approach to this situation.**

*Id.* (emphasis added).  Although the FTC does not promulgate regulations pertaining to the FDCPA, as the agency tasked with enforcement of the statute, its interpretation lends helpful support here.   *See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*,

---

[5] Defendant's Notice of Supplemental Authority (Doc. # 31) pointed the Court to a recent decision from the District of Kansas, which applied the Tenth Circuit's reasoning from *Marx* and held that a voicemail containing only the caller's name and requesting a call back was not a "communication" because it did not "expressly reference debt" and the recipient could not "infer that the message involved a debt." *Hagler v. Credit World Servs., Inc.*, No. 13-CV-2452-DDC-JPO, 2014 WL 4954595, at *7 (D. Kan. Oct. 1, 2014).  The Court examined this decision, but as it discussed at *supra*, pp. 10-11, it disagrees that *Marx*'s reasoning can be extended to non-third-party communications, as such an extension would significantly undermine the protections of 1692e(11).

111 F.3d 1322, 1327 n.8 (7th Cir. 1997) (giving "due weight" to the FTC's "informed interpretation" of a statutory term in the FDCPA); *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006) (deferring to the above-cited *FTC's Staff Commentary on the FDCPA*, 53 Fed. Reg. 50097–02, at *4 (Dec. 13, 1988), in defining a statutory term).

Unsurprisingly, the FTC's "common sense" reading of what it means to "indirectly" communicate with a debtor about a debt is in line with the view of the majority of cases[6] on this point in other district courts across the country.  *See, e.g., Foti*, 424 F. Supp. 2d at 655-56 ("Defendant's voicemail message, while devoid of any specific information about any particular debt, clearly provided some information, even if indirectly, to the intended recipient of the message.  Specifically, the message advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter. Given that the obvious purpose of the message was to provide the debtor with enough information to entice a return call, it is difficult to imagine how the voicemail message is not a communication under the FDCPA" ); *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1076 (E.D. Cal. 2007) ("Although the messages do not mention specific information about plaintiff's debt or the nature of the call, § 1692a(2) applies to information conveyed 'directly or indirectly.'  Here,

---

[6] The federal courts have divided on the question of whether a voicemail message that does not specifically mention the purpose or subject of its call – like the voicemails here – constitutes a "communication" under the Act.  *See Chatman v. GC Servs., LP*, No. 3:14-CV-00526-CMC, 2014 WL 5783095, at *5 (D.S.C. Nov. 6, 2014) (noting that the argument that a voicemail was not a "communication" because it did not explicitly convey information about a debt "rests on a clear minority interpretation of the FDCPA's definition of 'communication'"); *see also Lee v. Robinson, Raegan & Young, PLLC*, No. 3:14-CV-0748, 2015 WL 328323, at *5 (M.D. Tenn. Jan. 26, 2015) (noting split).  However, "[t]he weight of authority falls in favor of a broad interpretation [of 'communication'], and most courts to decide this issue have held that voicemails are communications that must conform to the disclosure requirements of section 1692e(11)."  *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1188-89 (W.D. Wash. 2011).

defendant's messages conveyed information to plaintiff, including the fact that there was a matter that she should attend to and instructions on how to do so"); *Belin v. Litton Loan Servicing, LP*, No. 8:06-CV-760, 2006 WL 1992410, at *4 (M.D. Fla. July 14, 2006) ("messages left on answering machines that did not directly convey information about a debt [are] still communications under the FDCPA, because they conveyed information about a debt indirectly, since the purpose of the message is to get the debtor to return the call to discuss the debt"); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005) (same).

Moreover, this interpretation of "communication" is consistent with the Act's broad mandate to protect consumers.  *See Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer.")  Defendant's overly exacting definition of what it means to "indirectly" convey information about a debt to a consumer would not only defeat a liberal construction, but would produce an absurd result: consumers would entirely lose the Act's protections under Section 1692e(11) if debt collectors were to leave messages obscuring their true identity and the purpose for their call.  This reading of the statute simply cannot be squared with the purpose of Section 1692e – i.e., to prevent the use of "any **false, deceptive, or misleading** representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e (emphasis added); *see also Lee v. Robinson, Raegan & Young, PLLC*, No. 3:14-CV-0748, 2015 WL 328323, at *6 (M.D. Tenn. Jan. 26, 2015) (citing cases) (holding a message in which a caller identified herself as an employee of a law firm constituted a "communication" from a

debt collector despite the fact that it did not include the words "debt" or reference the purpose of the  call, because, the Act, "when read broadly as Congress intended, includes non-specific communications between debt collectors and consumers"); *Foti*, 424 F. Supp. 2d at 657-58 (noting that a narrow reading of "communication" in section 1962e "would be inconsistent with Congress's intent to protect consumers from 'serious and widespread' debt collection abuses"); *Ramirez*, 567 F. Supp. 2d at 1041 (noting that a strict interpretation of what it means to "indirectly" communicate to a debtor would fail to give proper consideration to "Congress's intent in enacting the FDCPA, which calls for a broad construction of its terms in favor of the consumer").  Allowing such cryptic messages to escape the FDCPA's reach would also undercut the Act's intent to help consumers "understand, make informed decisions about, and participate fully and meaningfully in the debt collection process."  *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006).

Accordingly, because the Court has concluded that the three voicemails constituted "communications" for purposes of Section 1962e, and because it is undisputed that Olson Shaner failed to disclose that the communications were "from a debt collector," as required by Section 1692e(11), Defendant violated that statutory provision, and Plaintiff is entitled to summary judgment on this claim.

### 3.  The Voicemails Left for Plaintiff Did Not Provide "Meaningful Disclosure" of Defendant's Identity And Thus Violated Section 1692d(6)

The FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and provides that such conduct includes "the placement of

telephone calls without **meaningful disclosure of the caller's identity**." 15 U.S.C. § 1692d(6) ("Section 1692d") (emphasis added).  In this case, it is undisputed that, in each of her three voicemail messages, Olson Shaner's representative 1) identified herself by her first name; 2) identified her employer, Olson Shaner; 3) identified Olson Shaner as a "law firm"; and 4) stated that the phone call involved a "personal matter." Accordingly, the Court must determine whether these four pieces of information constituted "meaningful disclosure" of "the caller's identity."

Importantly, in determining whether a debt collection practice is deceptive or misleading, that practice "must be viewed objectively from the perspective of the 'least sophisticated consumer.'"  *Ellis v. Cohen & Slamowitz*, LLP, 701 F. Supp. 2d 215, 219 (N.D.N.Y. 2010).  This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . .  the ignorant, the unthinking and the credulous."  *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993).  At least seven federal Courts of Appeal have applied the least sophisticated consumer standard[7] to alleged violations of Section 1692e, applying to "false and misleading representations."[8] The Tenth Circuit has not expressly adopted this standard in a published opinion, but it has released an unpublished opinion applying an "objective" standard, "measured by

---

[7] *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1002 (3d Cir. 2011); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010); *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer" standard); *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000) (same); *Clomon*, 988 F.2d at 1318-19.

[8] The Court has found no legal authority to indicate that a different standard would apply to claims arising under section 1692d, nor is there reason to conclude that a different standard would apply.

how the least sophisticated consumer would interpret the notice received from the debt collector." *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)); *see also Fouts v. Express Recovery Servs., Inc.*, No. 14-4046, 2015 WL 427425, at *3 (10th Cir. Feb. 3, 2015) (noting that a purported violation did not meet the "least sophisticated consumer" standard).

In interpreting any statute, the Court must "determine congressional intent, using traditional tools of statutory construction." *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008). The plain language of § 1692d requires that the disclosure of identity be "**meaningful**," and that section specifically targets the caller's "identity" as the specific piece of information that must be shared with consumers. *Compare* 15 U.S.C. § 1692d(6) (requiring "meaningful disclosure of the caller's identity") *to* 15 U.S.C. § 1692e(11) (mandating that, in an initial communication, a debt collector state that she is "attempting to collect a debt and that any information obtained will be used for that purpose"). As Judge Babcock explained in holding that the name of a debt collection company must be disclosed under Section 1692d, the relevant "identity" at issue is that of the debt collector *qua* debt collector:

> A caller's given name has no real "meaning" to a consumer—the human caller is not the entity which owns or seeks the debt; the consumer would not satisfy the debt by writing a check to the caller; nor would the consumer sue the caller personally for violating the FDCPA. Thus, the only way for an identity disclosure to be meaningful to a consumer is if it discloses the name of the debt collection company. . . . Given the information that § 1692d(6) targets, there are only three constructions of "meaningful disclosure of the caller's identity:" either it requires disclosing the caller's personal name (or alias), the debt collection company's name,

or both.  A liberal construction favoring the consumer would require disclosing the debt collection company's name.

*Torres v. ProCollect, Inc.*, 865 F. Supp. 2d 1103, 1105 (D. Colo. 2012).

Although no circuit courts have passed on what, precisely, is required for disclosure of a "caller's" identity to be "meaningful" for purposes of Section 1692d, other district courts, including this one, have concluded that such disclosure would minimally involve the name of the debt collection company – and, as a logical corollary, the nature of the caller's business, if the business name (e.g., "Olson Shaner") does not obviously demonstrate the nature of the business (i.e., the caller's "identity" as a debt collector). *See, e.g., id.; Doshay v. Global Credit Collection Corp.,* 796 F. Supp. 2d 1301, 1304 (D. Colo. 2011) (citing *Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp.2d 1069, 1074 (E.D. Cal. 2007)) ("Meaningful disclosure requires that the debt collector state his or her name, capacity, and provide enough information to the consumer as to the purpose of the call"); *Hosseinzadeh,* 387 F. Supp. 2d at 1112 ("'meaningful disclosure' presumably requires that the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call or the reason the questions are being asked"); *Wright v. Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591, 597 (N.D. Ga. 1983) (same).  This interpretation is consistent with a broad reading of the statute and makes good sense in light of the FDCPA's protective purposes: consumers can only "understand, make informed decisions about, and participate fully and meaningfully in the debt collection process" if consumers know that the caller they are receiving a message from is working with a debt collector.  *See Clark*, 460 F.3d at 1171.

Here, it is undisputed that the caller who left Plaintiff voicemails identified herself as calling from Olson Shaner, a "law firm."  Defendant's only argument that this represents "meaningful disclosure" of Olson Shaner's identity rests on its assumption that a consumer would be able to **remember** the nature of Olson Shaner's business (i.e., that it was a law firm engaged in debt collection) from prior interactions with Olson Shaner.  Specifically, Defendant points to the "First Notice" letter, received approximately two months before Plaintiff received a Scripted Voicemail (which, notably, was signed by an attorney from "N.A.R., Inc.") and Plaintiff's phone call, placed ten days prior to the first Scripted Voicemail (in which the only mention of "Olson Shaner" occurred in the very beginning of the call).

Although this assumption might well be true when it comes to particularly shrewd consumers with excellent recall, whether "meaningful disclosure" occurred is viewed objectively, from the perspective of the "least sophisticated consumer."   It would not be readily apparent to the "least sophisticated" consumer that Olson Shaner, in describing itself as a "law firm" calling about a vague "personal matter," was acting as a debt collector, and the call was placed for the sole purpose of collecting on a debt. Moreover, the voicemails here provided no other suggestion or clues that they came from a debt collector rather than a law firm, and dealt with a debt rather than a "personal matter."  Put another way, "this is not a case where the fact that the communication is from a debt collector would be apparent even to the least sophisticated consumer." *See Foti*, 424 F. Supp. 2d at 669.  Instead, a consumer would have to, upon hearing the message, recall that she had previously communicated with Olson Shaner.   This

represents an "unreasonable" burden on "[t]he least sophisticated consumer, who may receive voluminous messages and calls." *Id.* Indeed, allowing debt collectors to circumvent the "meaningful disclosure" requirements by pointing to its prior communications with a consumer would effectively "eviscerate the statute's protections in subsequent communications, placing the burden on the consumer to recall the first communication and draw the connection to the second communication." *Id.*

In sum, because Defendant's messages did not "meaningfully disclose" Olson Shaner's identity, the voicemails also violated Section 1692d(6), and Plaintiff is similarly entitled to summary judgment on this claim.

## B. CLASS CERTIFICATION

### 1. The Class Definition

In her Motion for Class Certification and Appointment of Class Counsel (Doc. # 25), Plaintiff seeks to certify the following Class:

> All persons (1) located in Colorado, (2) for whom Olson Associates, P.C. left, or caused to be left, a voice message, (3) in connection with the collection of a consumer debt, (4) between March 31, 2013 and March 30, 2014,[9] (5) that failed to state that Olson Associates, P.C. was a debt collector and/or that the purpose of the call was to collect a debt and/or that any information would be used for that purpose.

Defendant specifically objects to the fifth component of this definition, contending that it would make it "nearly impossible to identify potential class members. Such an inquiry is likely to involve potentially thousands of hearings, with the production of potentially thousands of voicemail messages (if they are even available) to determine

---

[9] This period represents the one year prior to the filing of Plaintiff's Complaint.

whether they meet Plaintiff's proposed class definition." (Doc. # 29 at 5.) As the Court discusses below, in its discussion of whether Plaintiff meets Rule 23(a)(3)'s "typicality" requirement, given Defendant's own record-keeping practices and the possibility of electronic keyword searching, the identification of class members will not be nearly as difficult as Defendant asserts. Nevertheless, the Court agrees that the fifth element of the proposed definition is imprecise, because it appears to conflate Section 1962e(11)'s disclosure requirements in the case of an "initial communication" (i.e., "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose") with its disclosure requirement in a "subsequent communication"[10] (i.e., "that the communication is from a debt collector.")

Defendant proposes that that subsection (5) of Plaintiff's proposed definition be modified to read: "(5) where Olson Associates, P.C. left a message for the consumer that is materially identical to the following message:

> Hi, this message is for (debtor/co-debtor). This is (Olson Shaner employee's name) with the law firm of Olson Shaner.  Please return my call regarding a personal matter. I will be in the office today until (time), and will return (tomorrow/on Monday) at (time). You can reach me at (number)."

The Court finds Defendant's proposed definition to be superior because it is more precise (as to the specific "subsequent communication" claims in this case), and, per Defendant's representations, could streamline the process of identifying potential class members.   As such, the definition of the class is:

---

[10] It appears that only "subsequent" (not "initial") communications are at issue here, as Defendant seems to send "Initial Notice" letters to its account holders prior following up with voicemails.

> All persons (1) located in Colorado, (2) for whom Olson Associates, P.C. left, or caused to be left, a voice message, (3) in connection with the collection of a consumer debt, (4) between March 31, 2013 and March 30, 2014, (5) where Olson Associates, P.C. left a message for the consumer that is materially identical to the following message:
>
> > Hi, this message is for (debtor/co-debtor). This is (Olson Shaner employee's name) with the law firm of Olson Shaner.  Please return my call regarding a personal matter. I will be in the office today until (time), and will return (tomorrow/on Monday) at (time). You can reach me at (number).

### 2.  The Requirements of Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following prerequisites to class certification:

> One or more members of a class may sue or be sued as a representative parties on behalf of all only if
>
> > (1) the class is so numerous that joinder of all members is impracticable,
> > (2) there are questions of law or fact common to the class,
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> > (4) the representative parties will fairly an adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).  As the party seeking class certification, Plaintiff must demonstrate that all four prerequisites of Rule 23(a) are clearly met, as well as show that this case falls into one of the three categories set forth in Rule 23(b).  *See Shook*, 386 F.3d at 971; *Tabor*, 703 F.3d at 1227.  In deciding whether certification is appropriate, doubts should be resolved in favor of certification.  *See Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1988) ("if there is error to be made, let it be in favor and not against the maintenance of a class action.")

### a. Numerosity

In order to meet this element, "[t]he burden is upon [a] plaintiff[] seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Trevizo*, 455 F.3d at 1162 (internal quotation omitted).  There is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).  Instead, this is a fact-specific inquiry, and the district court has wide discretion in making this determination. *Trevizo*, 455 F.3d at 1162.

Plaintiff has satisfied numerosity here.  It is undisputed that approximately 3350 individuals with collections accounts received at least one voicemail message that conformed to Defendant's "Scripted Voicemail."  Joinder of this number of Plaintiffs would be impracticable.

Defendant did not challenge Plaintiff's argument that she established numerosity, except in stating that "the parties and the Court are likely to encounter significant difficulties in identifying the potential class members."  (Doc. # 29 at 8.)  Specifically, Defendant argues that "In order to review each account in a timely fashion, several individuals would be required to review the applicable accounts, which is likely to take several weeks, even if the individuals worked a full work week to participate in this task." (*Id.* at 6.)

"Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable."  Manual For Complex Litigation (Fourth) § 21,222 (2004).  "An identifiable class exists if its

members can be ascertained by reference to objective criteria." *Id.* Ascertainability requires that "[t]he method of determining whether someone is in the class must be administratively feasible" and must not depend on "individualized fact-finding or mini-trials." *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-97 (D. Colo. 2014) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013)). That Defendant may need to search its existing records does not mean, however, that this class is "unascertainable." The determination of whether a particular individual received a Scripted Voicemail is readily and objectively determinable according to Defendant's own record-keeping measures, which specifically note when one of Defendant's representatives left a "Script Message" for an account holder. *See, e.g.,* (Doc. # 13-2 at 2) (noting that it left Plaintiff a "SCRIPT MESSAGE" on three different occasions in September of 2013); (Doc. # 29 at 6) (noting that "In order to determine whether a voicemail message was left, each of the account notes would need to be reviewed to see if there are any notations regarding a voicemail message.") *Compare Donaca*, 303 F.R.D. at 396-97 (holding that a class was not ascertainable because, "despite his counsel's best efforts, plaintiff has been unable to identify any individual or phone number that received a telemarketing call from those platforms or dealers on those dates other than [the named plaintiff] himself. Apparently any records that could have identified such persons or calls have been lost or destroyed").

### b. Commonality

In order to demonstrate commonality, plaintiffs must also show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Not all

questions of law and fact need be common to the class, but, as the Supreme Court recently clarified, this requirement is not met merely because the putative class members allegedly "all suffered a violation of the same provision of law." *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). Indeed, it is not just the presence of common questions that matters, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke." *See id.* "The district court retains discretion to determine commonality because it is 'in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and . . . to select the most efficient method for their resolution.'" *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (internal citation omitted).

The overriding common question here is grounded in Defendant's Scripted Voicemail and whether that Scripted Voicemail violated the FDCPA. Defendant has estimated that approximately 3350 of its account holders received a materially identical Scripted Voicemail,[11] and, accordingly, Plaintiff has met its burden to show shared issues of fact and law, as resolution of this claim would resolve whether Defendant violated the FDCPA as to a particular account holder "in one stroke." *See Dukes*, 131 S. Ct. at 2551; *see also Collins v. Erin Capital Management, LLC*, 290 F.R.D. 689, 696

---

[11] Specifically, Defendant admitted that "Any voicemail message that would have been left [for other putative class members] is expected to be consistent with the voicemails at issue in this case." (Doc. # 25-2 at 9.) That the messages were presumably modified so as to include the name of the particular Olson Shaner representative who was calling and the name of the alleged debtor is immaterial. *See Lang v. Winston & Winston, P.C.*, 2001 WL 641122, *4 (N.D. Ill. 2001) (though there was "variety in the language of the [debt collection] letters," the "common nucleus of operative fact" remained and commonality was found); *Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99, 103 (W.D. Va. 2000) ("mailing a standardized [debt collection] letter satisfies commonality").

(S.D. Fla. 2013) (commonality satisfied where plaintiff "alleges he suffered the same FDCPA violation as the proposed class");  *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (commonality satisfied where "[t]he key question is whether [defendant] violated the FDCPA by leaving a voice message for putative class members, during the class period, without disclosing that the communication was from a debt collector.  This overriding common question, which is subject to common resolution, is enough to establish commonality").

### c.  Typicality

Rule 23(a)(3) requires the claims of a named plaintiff to be "typical" of the claims of the class she seeks to represent.  However, the interests and claims of a named plaintiff and class members need not be identical to satisfy typicality.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010).  Provided that the claims of named plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Id*.

Here, the named Plaintiff's claims are based upon the same fact pattern – the receipt of a Scripted Voicemail – as the claim of every other member of the putative class.  Additionally, the named Plaintiff advances the same legal theory as the putative class in support of the defendant's liability, i.e., that these Scripted Voicemails violate the FDCPA.   Accordingly, the named Plaintiff has met the burden of showing that her claims are typical of those of the class.  *See Manno*, 289 F.R.D. at 687 (Plaintiff's "claims are typical because he alleges that [defendant] called him . . . and failed to disclose the call was from debt collector. To prove his own case, [plaintiff] will have to

set forth proof that such calls, which affected all class members, violated the FDCPA."); *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 405 (N.D. Ill. 2009) (named plaintiff's claim was "typical to the class because it arises from the same form letter allegedly received by all class members, and it is based on the same legal theory that the letter violates the FDCPA"); *Chapman v. Worldwide Asset Management, L.L.C.*, 2005 WL 2171168 (N.D. Ill. 2005) (typicality satisfied when "all members of the class will be persons who received the form notice," named plaintiff received the form notice, and there was no indication that named plaintiff was "situated differently than other members of the class").

Moreover, as discussed in the Court's summary judgment holding, the Court need not "delve into whether each putative class member did, or did not, have prior contact with [Defendant] and whether each class member did, or did not, have prior knowledge that [Defendant] was a debt collector." *See Manno*, 289 F.R.D. at 684-85. This is "because the statute requires a debt collector to identify itself on every call and whether it did so or not is decided by reference to an objective inquiry – whether the 'least sophisticated consumer' would know.'" *Id.* "Thus, whether [Plaintiff] or other class members were actually misled, or were subjectively unaware that [Defendant] was a debt collector, is not an individualized issue defeating commonality." *Id.; see also Mailloux v. Arrow Financial Services, LLC*, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) (an objective standard is used for determining FDCPA violations so the court did "not have to make an individual determination of each potential class member's subjective understanding of the [debt collection] letter in question").

### d. Fair and Adequate Representation of the Class

Rule 23(a)(4) requires that the representative parties "fairly and adequately

protect the interests of the class."  In the Tenth Circuit, adequacy of representation

depends on resolution of two questions.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314

F.3d 1180, 1188 (10th Cir. 2002).  These questions are: "'(1) do the named plaintiffs

and their counsel have any conflicts of interest with other class members and (2) will the

named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?'"  *Id.* at 1187–88 (internal citation omitted).

Plaintiff contends that there are no conflicts between the named Plaintiff,

counsel, or other class members.  The named Plaintiff submitted an affidavit indicating

that she will vigorously prosecute the action on behalf of the class and that she

understands her responsibilities as a class representative.  (Doc. # 25-3.)  As far as

class counsel are concerned, Plaintiff asserts that her counsel are experienced class

action litigators, particularly of consumer-related class actions.  (Doc. # 25 at 11.)  Since

Defendant has not raised any issue concerning the adequacy of either the class

representative or class counsel, and there is no reason to question Plaintiff's assertions,

Plaintiff has satisfied the adequacy of representation requirement.

### 3.  The Requirements of Rule 23(b)(3)

Plaintiff seeks class certification under Rule 23(b)(3), which allows for class

certification if "the court finds that the questions of law or fact common to the members

of the class predominate over any questions affecting only individual members, and that

a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."   Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class.  Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Plaintiff meets the predominance requirement here for the same reasons previously discussed with regard to commonality and typicality.   Namely, the questions of law or fact common to the members of this class predominate over individual issues, because the Scripted Voicemail was Defendant's standardized policy.  *See Kimball*, 2011 WL 3610129, at *6 ("[Plaintiff's] claim and the claims of the proposed class members all rest on the question of whether or not the [Defendant's] Message violates the FDCPA.  Accordingly, the Court finds that the predominance requirement of Rule 23(b)(3) is satisfied");  *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012) ("[A] debt collector violates the FDCPA by placing a telephone call and failing to meaningfully disclose its identity.  As such, the Court finds [Plaintiff's] proposed class satisfies Rule 23(b)(3)'s predominance requirement.").

As for the superiority requirement, Rule 23(b)(3) sets forth four nonexclusive factors in determining whether this factor is met:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Application of these factors shows that a class action is the superior method to adjudicate this case.  No class member has demonstrated an interest in prosecuting a claim individually, there are no other cases against Defendant involving the issues presented in this case by a proposed class member, the forum is desirable as the proposed class contains Colorado residents only, and there will be no difficult case-management issues because the facts and claims are very straightforward and the evidence necessary to prosecute the case is within Defendant's records.  Additionally, the FDCPA permits individual plaintiffs to recover up to $1,000 in statutory damages. *See* 15 U.S.C. § 1692k.  Thus, the potential recovery for an individual plaintiff is unlikely to provide sufficient incentive for individual members to bring their own claims. Moreover, courts have held that FDCPA class actions are usually superior for reasons of judicial economy.  *See, e.g., Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005); *Piper v. Portnoff Law Associates,* 262 F. Supp. 2d 520 (E.D. Pa. May 15, 2003); *Brink v. First Credit Resources,* 185 F.R.D. 567 (D. Ariz. 1999).

## IV.   CONCLUSION

For the reasons detailed above, the Court DENIES Defendant's Motion for Summary Judgment (Doc. # 13), GRANTS Plaintiff's Cross-Motion for Summary Judgment as to Liability (Doc. # 24), and finds that Defendant's "Scripted Voicemail" messages, left for the named Plaintiff on three different occasions, violated 15 U.S.C. §§ 1692d(6) and 1692e(11).  It is

FURTHER ORDERED that, having found the requirements of Rule 23(a) and Rule 23(b)(3) satisfied, the Court GRANTS Plaintiff's Motion for Class Certification and

Appointment of Class Counsel (Doc. # 25).  Plaintiff's proposed class is certified under

Federal Rule of Civil Procedure 23(b), and Plaintiff's counsel is appointed to represent

the following class:

> ALL PERSONS (1) LOCATED IN COLORADO, (2) FOR WHOM OLSON
> ASSOCIATES, P.C. LEFT, OR CAUSED TO BE LEFT, A VOICE MESSAGE, (3)
> IN CONNECTION WITH THE COLLECTION OF A CONSUMER DEBT, (4)
> BETWEEN MARCH 31, 2013 AND MARCH 30, 2014, (5) WHERE OLSON
> ASSOCIATES, P.C. LEFT A MESSAGE FOR THE CONSUMER THAT IS
> MATERIALLY IDENTICAL TO THE FOLLOWING MESSAGE:
>
> HI, THIS MESSAGE IS FOR (DEBTOR/CO-DEBTOR). THIS IS
> (OLSON SHANER EMPLOYEE'S NAME) WITH THE LAW FIRM
> OF OLSON SHANER.  PLEASE RETURN MY CALL REGARDING
> A PERSONAL MATTER. I WILL BE IN THE OFFICE TODAY
> UNTIL (TIME), AND WILL RETURN (TOMORROW/ON MONDAY)
> AT (TIME). YOU CAN REACH ME AT (NUMBER).

DATED: March 13, 2015

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge